UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN E. JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SACRAMENTO DEPARTMENT OF HEALTH AND HUMAN SERVICES et al.,<br><br>Defendants. | No. 2:16-cv-00920 MCE GGS PS<br><br>FINDINGS AND RECOMMENDATIONS |

*INTRODUCTION AND SUMMARY*

Pro se cases linger far too long in the pleading stage. This case exemplifies the problem. Complaints are amended, motions to dismiss are generated, and the cycle repeats itself. Erroneous defendants are sued and various claims contain references within themselves to several other discrete claims. Claims are repeated in different claims. Evidentiary exhibits are attached to the complaint. If a plaintiff has a potentially meritorious claim, but simply does not know how to state it, who to sue, etc., the merits never see the light of day in any time frame which does credit to our system of justice.

Therefore, to the extent possible, this will be the last step in the pleading process. Those claims which can now go forward, giving the pro se plaintiff the benefit of the doubt, will go forward; those claims which are not, and cannot be stated correctly, should be dismissed. In sum,

plaintiff's Causes of Action (Claims) 1, 6 and 4 (Fourteenth Amendment) should go forward; Causes of Action (Claims) 2, 3, 4 (FMLA),[1] 5, and 7, should be finally dismissed.

*PROCEDURAL HISTORY*

The Complaint was filed on May 2, 2016. It contained a myriad of discrimination claims, state law claims, and numerous parties. A motion to dismiss followed, and the undersigned issued a comprehensive order On April 17, 2017 dismissing plaintiff's original Complaint with leave to amend, ECF No. 19. The order discussed the pleading standard under Federal Rule of Civil Procedure 8, and instructions were given regarding how to conform to it and provided some guidance with regard to the substantive pleading requirements that apply to various of her causes of action (claims).

Plaintiff, appearing in pro se, then filed her First Amended Complaint on May 18, 2017. ECF No. 20. Defendant County of Sacramento Department of Health and Human Services ["County"] filed a Motion on June 16, 2016 on behalf of all of the parties,[2] to Dismiss under Rule 12(b)(6), and in certain respects, 12(e) for more definite statement. ECF No. 21. Plaintiff filed an Opposition to the Motion on July 20, 2017, ECF No. 23, and defendants filed a Reply on July 27, 2017. ECF No. 25.

*FACTS*

The plaintiff has not changed her factual allegations appreciably since so the court issued its Order of April 17, 2017, ECF No. 19; the undersigned will state them only briefly here for context purposes.

Plaintiff was hired by the County on January 18, 2005 as a Health and Human Services Social Worker assigned to The County's Children Protective Services Department, ECF No. 20 ¶ 15, and was terminated on October 13, 2013. Id. at ¶16. Plaintiff contends that her termination was wrongful and in violation of federal standards and practices under: (1) 42 U.S.C. section 1981a(a)(1)(racial and age discrimination) ECF No. 20 at 12-13; racial and age discrimination

---

[1] Plaintiff asserts two "Fourth" causes of action.
[2] Plaintiff names a County agency, various unnamed County officials and Does 1-100 as defendants.

2

under 42 U.S.C. section 2000e-5(g)(1)(k), 29 U.S.C. section 621 (age), denial of Due Process of Law under the Fourteenth Amendment to the federal Constitution, violation of 29 U.S.C. section 2601, the Family and Medical Leave Act ["FMLA"], and Failure to Accommodate under the Americans with Disabilities Act ["ADA"], 42 U.S.C. section 12101, et seq.[3] Before analyzing the sufficiency of the foregoing, the court notes that plaintiff also purports to plead a cause of action based on "Disparate Impact/Disparate Treatment." ECF 20 at 13. In its order of April 17, 2017, ECF No. 19 at 9:8-11, the Court ruled that there is no separate claim available for disparate treatment and impact as these are simply legal theories under which various discrimination claims may be litigated, and directed her not to attempt to replead them as a separate claim.

*Defendants' Motions*

Defendants have moved to dismiss for failure to state a claim under Rule 12(b)(6), and for a more definite statement under Rule 12(e). The court will not separately address the Rule 12(e) element of defendants'' motion insofar as the more specific 12(b)(6) motion resolves the issue raised under that Rule.

*LEGAL STANDARDS*

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" rather it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). "The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---
[3] Plaintiff points to 42 U.S.C. section 2112(b)(5) as the source of her disability claim, but this is clearly a typographical error that occurs in several places in her pleadings. Accommodation is addressed in 42 U.S.C section 12112(b)(5) and the court will assume this is the section upon which she is relying.

3

defendant is liable for the misconduct alleged." Id.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987). It is also true, however, that the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

*DISCUSSION*

A. *42 U.S.C. section 1981 Claims* (First and Sixth Causes of Action)[4]

Defendant's motion addresses race discrimination claims based on 42 U.S.C. section 1981, but only insofar as they request clarification of the claim pursuant to Fed. R. Civ. P. 12(e). See First and Sixth Causes of Action (Claims).

With respect to race/ethnicity, the elements of Title VII and § 1981 are indistinguishable in the employment (contract) context. Johnson v. Riverside Healthcare System, 534 F.3d 1116, 1122(n.3) (9th Cir.2010); Jurado v. Eleven–Fifty Corp., 813 F.2d 1406, 1412 (9th Cir.1987).

At this point it is safe to find that plaintiff has stated sufficient facts, albeit in a confusing format, to sustain this claim. She alleges differences in the way she, as an African American female, was treated differently in several regards including, among others, the following:

1. A supervisor commented that "all Black social workers should work in the fields and white social workers should work only in the office." ECF No. 20 at ¶¶ 13, 19, 20;

---

[4] Plaintiff's listed claims in the FAC caption are out of sync with many of the claims set forth in the text of the FAC. The undersigned has disregarded the caption and adjudicates this motion based upon the stated claims in the text.

4

1 | 2. She was treated differently, and less supportively, than a white social worker in relation to the conditions for an FMLA leave to care for her mother who suffered from dementia, id. at ¶ 17;

3. She was reassigned during a budget cut although she was not on the reassignment list while a white social worker who was on the list was not reassigned when she indicated she did not wish to be reassigned, id. at ¶ 29;

4. A white acting supervisor refused to proofread her court reports before they were submitted to the court, id. at 32, shortly after she received a Counselling Memorandum for being late with said reports, id. at ¶¶ 31, 32;

5. The veracity of her claim to holding a Master's Degree was challenged and she learned that other employees in a similar situation were not challenged, id. at ¶ 35;

6. Her pay was held up on two different occasions when a supervisor failed to approve her timesheets while all white social workers had their time sheets approved and they were paid on time, id. at ¶ 36;

7. She and another black social worker were instructed to transport a black youth who had done damage to the Sacramento Children's Home to Juvenile Hall but the supervisor and the Home refused allow the transport on the basis it was unsafe for both the workers and the youth, id. at ¶ 37.

As stated, the foregoing are exemplary, not necessarily exhaustive of plaintiffs allegations regarding her Section 1981 (and Title VII) discrimination claim. The court understands that the gravaman of the claim is that she was ultimately terminated based on, inter alia, race discrimination. That is, such is the adverse action of which plaintiff is concerned.

Defendants assert confusion because plaintiff intermixes the Section 1981 claim with the Title VII claim. They point to some typographical errors as well in plaintiff's reference to Title VII. Although defendants are correct, the substantively identical section 1981 claims (and Title VII claims) are clear enough.

Therefore, although the court has some doubt that the parties to the Section 1981 claim(s) have been adequately identified, see Fed. Of African American Contractors v. City of Oakland,

96 F.3d 1204 (9th Cir. 1996), these claims shall go forward. There is simply no point to further amendment here insofar as defendants have sufficient notice of the claims. No further motions to dismiss will be permitted on these claims. Should deficiencies exist, those deficiencies may be addressed on motion for summary judgment (and only one motion for summary judgment will be entertained).

B. *Disparate Impact/Disparate Treatment Claim (Third Cause of Action)*

The court has already ruled that this claim cannot stand as it misconstrues an evidentiary theory for a claim. This claim should, therefore, be dismissed without leave to amend. It must be noted, however, that plaintiff's complaint is rife with allegations of a long and repeated pattern of the different treatment of black versus white employees. This evidence may be pursued in whatever discrimination claims exist going forward, e.g., section 1981 discrimination claim on a theory of disparate treatment.

No facts regarding disparate impact have been set forth in the FAC, even assuming that they could be brought in a section 1981 claim (and they cannot) or a Title VII claim.

Accordingly, this claim set forth as the Third Cause of Action should be dismissed without leave to amend.

C. *Title VII Claim* (Race Discrimination) (First and Sixth Causes of Action)[5]

Defendant moves to dismiss this claim, insofar as it is based on race discrimination, because plaintiff never expressly asserted such a claim in her administrative filings.

Administrative exhaustion through the EEOC is a condition precedent to the filing of a Title VII action in court. Anderson v. Benedict, 2012 WL 952863 *2 (E.D.Cal. 2012). The EEOC charge must be filed within 180 days of the last discriminatory act (or within 300 days in a state, such as California, which has its own anti-discrimination laws and agency. 42 U.S.C. §2000e-5(e)1. When the agency issues a right to sue letter, the plaintiff then has 90 days to file a complaint in the federal court. 2 U.S.C. section 2000e-5(f)(1). Of course, the claim in federal court must have been fairly set forth as a basis in the administrative claim for each of

---

[5] The Title VII claims are interspersed in the text with Section 1981 claims.

complainant's court claims, i.e., "can reasonably be expected to grow out of the charge." Rodriguez v. Airborne Express, 265 F.3d 890, 897 (9th Cir. 2001) (refusing to find that an ethnicity discrimination charge in the administrative complaint would include a disability discrimination claim.)

Defendants attach the entire amended complaint to their motion, including Exhibits A and B, the Exhibits which contain *portions* of the record before the EEOC and FEHA. Defendants cite to a page of Exhibit A which recounts the plaintiff's allegations: discrimination because of age, disability and sex.[6] The problem here is that the recounting is done by the Sacramento defendant agency in its *response to the allegations*; there are no pages comprising the administrative complaints themselves. Nor do the EEOC decisions themselves set forth the allegations.

It may well be that defendants' characterization of plaintiff's allegations are 100% accurate, or even a quote. It also may well be that the legal discussion by defendants on the need to specifically identify the bases for bringing the administrative claim is spot on. Finally, it might well be the case to continue the Title VII claim only to receive the actual allegations will be waste of time. Nevertheless, in order to dismiss the Title VII claim on the basis of a lack of exhaustion, the filed complaint must be reviewed, not simply the response to it. The undersigned cannot rule out the possibility (having reviewed the FAC in this case) that race is mentioned in some area of the administrative complaint, but perhaps not in the introductory paragraphs.

The matter can easily be cleared up through discovery and a submission of the actual administrative complaint on summary judgment.

For the same reasons that the undersigned found the Section 1981 racial discrimination allegations sufficient enough to proceed, the undersigned finds similarly for the Title VII allegations.

Plaintiff was previously advised that the only proper party for Title VII discrimination claims was the entity for which plaintiff worked. Miller v. Maxwell's International Inc., 991 F.2d

---

[6] Although plaintiff's administrative complaints referenced sex discrimination, such an allegation is not made in the FAC.

583, 587 (9th Cir. 1993); Romain v.Shear, 799 F.2d 1416, 1417 (9th Cir. 1986). Plaintiff has sued several defendants including Does 1-100 who are individuals that plaintiff thinks may be a part of this lawsuit at some time FAC at p.4, Para. 7. Therefore, all defendants other than the County of Sacramento, should be finally dismissed for the Title VII federal discrimination claims.

D.   *Age Discrimination Claim (Second Cause of Action)*

To pursue a private ADEA claim in federal court, a plaintiff must comply with the administrative exhaustion requirements of 29 U.S.C. § 626. As in Title VII cases, "substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite ... [and] [t]he jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation." Leong. v. Potter, 347 F.3d 1117, 1122 (9th Cir.2003). "Exhaustion of administrative remedies is a condition precedent to the filing of an action under the ADEA in federal court." Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir.2005). In California, a "deferral" state (29 U.S.C. § 633(b)), these exhaustion requirements include the filing of an age discrimination charge with the California Department of Fair Employment and Housing ("DFEH") within 300 days of the alleged unlawful practice. See 29 C.F.R. 1626.7. Filing with the DFEH is deemed to be a filing with the EEOC and vice versa. McConnell v. General Telephone Co. of California, 814 F.2d 1311, 1316 (9th Cir.1987); see also 29 C .F.R. § 1626.10(c) ("charges received by one agency ... shall be deemed received by the other agency for purposes of § 1626.7"). There is no dispute that the plaintiff met the exhaustion requirement for a claim of age discrimination.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). These prohibitions apply to "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). These prohibitions apply to "individuals who are at least 40 years of age." 29 U.S.C.

§ 631(a); see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1280 (9th Cir.2000).

> A plaintiff alleging discrimination under the ADEA may proceed under two theories of liability: disparate treatment or disparate impact. Proof of disparate treatment requires a showing that the employer treats a person, here plaintiff, less favorably than others because of their age. In contrast, discriminatory motive or intent need not be shown under a disparate impact theory, which challenges facially neutral employment practices which have a discriminatory impact. However, under the latter theory the plaintiff must actually prove the discriminatory impact at issue, rather than merely an inference of discriminatory impact.

Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir.1990) (*citations omitted*).

Plaintiff here has alleged both disparate impact and disparate treatment as a separate cause of action which this court has already ruled is improper. ECF No. 19 at 9:8-11  On the basis of what she has alleged, however, only disparate treatment seems appropriate as a theory in this case if the age discrimination claim turns out to have any resonance at all.

Defendants seek dismissal of this claim on the ground that the Amended Complaint fails to state any salient facts in support of the claim that her dismissal was based, in some part, on her age. ECF No. 21 at 13.  In so doing they argue that the complaint fails to meet the plausibility standard established in Iqbal, supra.

A review of plaintiff's allegations discloses only two mentions of age.  First, she alleges that she is a 59-year old Black female. ECF 20 at ¶ 11. At paragraph 62 she refers to herself as an African American over 40 years of age.  Her statement of the Second Cause of Action, which is based upon age discrimination adds no additional facts and merely make the conclusionary allegation that the age discrimination of which she complains flowed directly from her participation in "protected activity" -- presumably her complaint to the Equal Employment Opportunity Commission ["EEOC"].  Id. at ¶¶ 71-74.

In short, the foregoing effort to plead facts to support an ADEA claim does not reach the level of plausibility required by Twombly v. Bell Atlantic Corp., 550 U.S. 544 (2007).  This court has held that this decision and those which followed "have recognized that the elements of a prima facie case are 'relevant to the court's analysis of the sufficiency of the complaint.'" Manzoor v. Travis Credit Union, 2012 WL 2921380 *3 (E.D.Cal. 2012) *quoting* O'Donnell v.

U.S. Bancorp Equipment Finance, Inc., 2010 WL 2198203 at *3 (N.D. Cal. 2010). See also Sablan v. A.B. Won Pat Int'l Airport Authority, 2010 WL 5148202 at *4 (D.Guam 2010). Nothing of substance has been pleaded in the FAC

However, as previously referenced, attached to plaintiff's complaint and reproduced in the Motion to Dismiss are a number of Exhibits. Even if the undersigned could review defendant's recounting of the allegations for purposes of determining whether amendment was possible, the allegations are far from sufficient.

One of the documents, marked as Exhibit A to defendant County's Motion to Dismiss, contains the County's response to plaintiff's EEOC complaint, and states the Complainant's allegations as follows: "[o]n or about February 2013, during my monthly staffing with Mrs. Chambers, she made a statement that the job responsibilities have changed, then Ms. Chambers stated to me that he was looking for another job for me because the job was getting hard." ECF 21-1 at 27. Further the document adverts to a statement by plaintiff to the EEOC that "[on or about 27 February 2013, during a unit meeting, my supervisor – Mrs. Marina Chamber asked me how many years before I retire from Respondent." Id. at 29. When given a chance to expand on these sparse facts when she responded to the pending motion, however, the only substantive statement plaintiff made was that Stephen Wallach had told her when she complained about what she saw as unacceptable behavior by her supervisor that she should "understand that my supervisor would treat a worker closer to her own age better because they have more in common with them." ECF No. 23 at ¶ 27. She apparently does not know if the person who ultimately replaced her was younger than she, but does state in that same opposition document that she "believes" that is the case "because why would the Defendants hire a 55 year old person." ECF No. 23 at ¶ 29.[7] These allegations are woefully insufficient.

Plaintiff has had two opportunities to plead an age discrimination claim, and has not come close. The undersigned thinks such is enough. No further amendment attempts should be allowed.

---

[7] At the time of her termination, plaintiff herself would have been a 55-56 year old person.

E.  *Failure to Accommodate Disability (ADA) (Fifth Cause of Action)*

This claim has no substance to it at all and fails under the Twombly and Iqbal standards discussed above. Plaintiff raises the fact that she had been hospitalized twice in 2007, ECF No. 20 at ¶ 21, and received an ADA accommodation for chest pains in 2008. Id. at ¶ 22. In March 2013 she complained of chest pains while requesting an FMLA leave to care for her mother, and visited with her cardiologist while on leave. Id. at ¶ 42. Apparently her ADA claim rests on her assertion that the supervisor should have advised her to seek medical care and, perhaps, to seek a disability leave when she advised the supervisor of the chest pains. There is no authority, however, for the concept that an employer must intervene in such a manner which would, to say the least, be more than a little intrusive. The court's research has not disclosed even a suggestion of such a responsibility on the part of an employer based on a single comment from an employee, and plaintiff does not claim that she *asked* for either a disability leave or a disability accommodation on account of her own health problems at that time. For this reason this claim will be recommended for dismissal without leave to amend.

F.  *FMLA Claim (Fourth Cause of Action)*

Under the FMLA any employee with at least 12 months service and at least 1,250 hours of service with the current employer during the previous 12 month period is eligible for leave under the Family Medical Leave Act ["FMLA"]. 29 U.S.C. § 2611. Plaintiff meets these criteria. One basis of eligibility for such a leave, up to 12 workweeks during any 12-month period, 29 U.S.C. § 2612(a)(1), is when it is needed in order to care for, among others, a parent of the employee if that parent has a serious health condition. Id. at (1)(C), An employer may require that any request for leave be supported by a certification issued by a health care provider for the person on whose behalf the leave is taken. Id. at 2613(a). If the employer doubts the validity of a certification it may, at its expense, require that the employee obtain a second opinion from a provider designated or approved by the employer, and a third such opinion if the first two disagree. Id at 2613(c)(1). It is unlawful for an employer to interfere with, to restrain or to deny an employee's exercise or attempt to exercise the rights granted in the law. 29 U.S.C. § 2615. The remedies available for violation of the Act include money damages and, where appropriate,

equitable relief including reinstatement of employment, 29 U.S.C. § 2617, and the complainant may bring an action to enforce the rights granted in any Federal or State court of competent jurisdiction. Id. at (a)(2).

In the moving papers defendants explain that although plaintiff got the certification required in order to obtain leave to take care of her mother, who was in a nursing home and suffering from dementia, the physician who provided it withdrew the certificate when she learned that plaintiff had not brought her mother to her home for her continued care. ECF No. 21 at 20:10-18. They challenge the sufficiency of plaintiff's claim on grounds that her failure to provide sufficient medical certification sufficed to support the suspension of leave and her termination for using the leave for purposes other than intended, i.e., she did not bring her mother home. Id. at17:12-18:5. They also argue that the claim is barred by the applicable statutes of limitations which are two years after occurrence of the claimed interference or three years if that interference was "willful" insofar as the employer "knew or recklessly disregarded whether its conduct violated the statute. Id. at 21:5-16.[8]

*Statute of Limitations*

Although the undersigned disagrees with defendants that plaintiff has not, under the fairly lenient standards associated with a motion to dismiss, substantively stated a claim for ordinary or willful breach of the Family Medical Leave Act (FMLA), it does appear that the statute of limitations for FMLA claims expired prior to the time plaintiff filed her lawsuit in this court. This is true for either the "ordinary" FMLA violation or the "willful" violation.

Plaintiff alleges that on April 22, 2013, she was informed by her supervisor that her FMLA leave had been revoked, she was considered AWOL, and she was thereafter on administrative leave. Although the FAC references further conversations where plaintiff attempted to convince her superiors otherwise, and she was finally terminated, in part, because of found abuse by her agency of the FMLA, the event which triggered the alleged breach of the

---

[8] Defendants have provided sufficient case law to support each of their arguments in isolation, i.e., without consideration of the unique facts alleged by plaintiff, and the court will therefore not recount that authority here.

12

FMLA was not the termination of plaintiff's employment but rather the April 22, 2013 event.

The case which disposes of this issue is defendants' cited case of Hanger v. Lake County, 390 F.3d 579 (8th Cir. 2004). The statute of limitations for an ordinary violation of the FLMA is two years; a willful violation has a limit of three years. Id. *citing* 29 U.S.C. §§ 3617(c)(1) and 2617(c)(2) respectively. Importantly, it is the time of the FMLA breach alleged (here, the first and last event of plaintiff's FMLA leave being terminated and her then AWOL status) which commences the limitations period. Further, the later administrative effects of the finding that plaintiff had abused her FMLA leave, i.e., her subsequent termination, does not cause the accrual period to change. Hanger at 583; see also Barrett v. Illinois Dept. of Corrections, 803 F.3d 893, 894-896; Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003).

Finally, plaintiff's actions in initiating EEOC administrative proceedings for alleged discrimination does *not* toll the FMLA limitations period, as no EEOC exhaustion is required for the FMLA claim. Medlock v. Fred Finch Children's Home, 2014 WL 4756055 *6 (N.D.Cal. 2014) (and cases cited therein). See also Ramsey v. Advance Stores Co. Inc, 2015 WL 3948119 *5) (D. Kan. 2015) (and cases cited therein). See generally, Johnson v. Railway Express Agency, 421 U.S. 454, 465-66 (1975) (administrative proceedings related to a Title VII action does not toll the limitations period for a 42 U.S.C. section 1981 action). While an employer's deception in terms of advising plaintiff not to file suit, or otherwise causing her not to file suit, could be grounds for tolling the limitations period, Blackman-Bahams v. Jewell, 2016 WL 1029587 (N.D. Cal. 2016), no such activity is alleged here.

Plaintiff's complaint was filed May 2, 2016. This date was over three years from April 22, 2013. Thus, either variety of FMLA violation is time barred (although the willful violation by only a few days).

The FMLA claim should be dismissed.

G. *Fourteenth Amendment Claim, ("Fourth" Cause of Action; this number is a duplicate in the FAC)*

Plaintiff describes her Fourteenth Amendment due process claim on the caption page of her complaint as "14th Amendment Due Process Violation (Failure to Properly Inform) FEHA-

13

Government Code Section 12940, et Seq." [sic]. However, the text of her claim within the body of the FAC is much clearer—she alleges only a deprivation of meaningful hearing Fourteenth Amendment claim.

Claims brought under the Fourteenth Amendment alleging that plaintiff was unconstitutionally discharged from employment requires that the plaintiff show she had a property right in continued employment for, if she did, the State cannot deprive her of this property right without providing due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (985). Such property interests are not inherent in the Constitution, but rather "stem from an independent source such as state law." Board of Regents v. Roth, 408 U.S. 564. 577 (1976).

In Skelly v. State Personnel Bd., 15 Cal.3d 194, 206-207 (1975), the California Supreme Court held that state law conferred a property interest in employment for public employees who had reached the status of "permanent employee" (as opposed to probationary status). It further held that in order to satisfy due process an agency considering disciplinary action against a public employee must accord the employee certain "procedural safeguards," including "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline. Id. at 215. "The Supreme Court's directive gave rise to a administrative procedure known as a *Skelly* hearing, in which an employee has the opportunity to respond to the charges based upon which the proposed discipline is based." Flippin v. Los Angeles City Bd. of Civil Service Com'rs, 148 Cal.App.4th 272, 280 (2007). These state protections support plaintiff's procedural due process claim.

The California courts have also recognized that "Due Process is a 'flexible concept." Gilbert v. City of Sunnyvale, 130 Cal.App.4th 1264, 1275 (2005). The "essence" of the due process right in the present context is that public employees are entitled not only to notice of the nature of the charges that led to the discipline proposed, but also the substance of the relevant supporting evidence and "*a meaningful opportunity to respond*" prior to discharge. Gilbert at 1278), *citing* Arnett v. Kennedy,416 U.S. 134, 170 (1974) (Powell, J concurring). Plaintiff's claim that she was prevented from responding to the primary charge against her regarding the

14

conditions of her FMLA leave by discussing the condition of her mother and the steps she was taking to protect her, essentially amount to a claim that she did not have a *meaningful* opportunity to meet the charges,[9] which is enough to preserve this claim. See ECF 20 at ¶96(a). In the balance of her claim on due process grounds she also challenges the impartiality of the hearing office and the failure to provide her an opportunity to review the evidence against her. Taken together these allegations could be seen by a factfinder as a denial of a *meaningful* opportunity to be heard by the ultimate factfinder. Thus this claim, however problematic it may turn out to be, should go forward at this point.

H.      *State Law Claims* (Seventh Causes of Action)

Plaintiff was previously advised of the necessity of filing a state administrative claim in order to proceed on the state law claims found in her Complaint. Order at 7. Exhaustion of the state requirement that a claim must be filed with the accused entity and denied before a suit may be brought in court is a jurisdictional prerequisite and therefore the absence of a properly filed and determined tort claim denies this court the jurisdiction to entertain an action on those unexhausted claims. Goethe v. California Department of Motor Vehicles, 2008 WL 489554 *3 (E.D.Cal. 2008); see also Brown v. Puget Sound Elec. Apprenticeship & Training Trust, 732 F.2d 726, 729-730 (9th Cir. 1984)(re parallel Hawaiian requirement). Thus the court should dismiss the state claims here without leave to amend for failure to exhaust the administrative remedy the State has provided under the State Tort Claims Act. Evans v. CSP Sacramento, 2011 WL 5593077 (E.D.Cal. 2011). Further, these claims should be dismissed without leave to amend.

*CONCLUSION*

Causes of action (Claims) 1, 6, and 4 (Fourteenth Amendment) should proceed and defendants be required to answer said claims; however, only the County of Sacramento is the proper defendant for the Title VII claim; Causes of Action (Claims) 2, 3, 4 (FMLA), 5 and 7

---

[9] In their moving papers defendants truncate the due process issue to the requirements for notice and opportunity to be heard, which they aver plaintiff admits she received, and leave out the qualifying of the term "opportunity" by the term "meaningful." Citing Loudermill, supra, at 545-546. The absence of the term "meaningful" from the analysis of the right conferred would reduce the concept of predeprivation hearing to a meaningless, rote procedure which clearly is not what either the United States or the California Supreme Court intended.

15

1 | (State claims) should be dismissed without leave to amend.

2 | These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 30, 2017

<u>/s/ Gregory G. Hollows</u>
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE