UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN E. JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SACRAMENTO DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,<br><br>Defendants. | No. 2:16-cv-0920 MCE DB PS<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Robin Jackson is proceeding in this action pro se. This matter was, therefore, referred to the undersigned in accordance with Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1). Pending before the undersigned is defendant County of Sacramento's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 78.) For the reasons stated below, the undersigned will recommend that defendant's motion for summary judgment be granted.

**BACKGROUND**

Plaintiff, proceeding pro se, commenced this action on May 2, 2016, by filing a complaint and a motion to proceed in forma pauperis. (ECF Nos. 1 & 2.) The previously assigned magistrate judge granted plaintiff's motion to proceed in forma pauperis and ordered service on defendant on July 7, 2016. (ECF No. 3.)

On May 18, 2017, plaintiff filed an amended complaint. (ECF No. 20.) Therein, plaintiff alleges that she is a "Black female who was employed by Department of Health and Human Services, Children Protective Services for approximately 8.5 years, from January, 2005 until October, 2013, as a Health and Human Services Social Worker Range B." (Am. Compl. (ECF No. 20) at 4.[1])

On June 15, 2017, "supervisor Claudia Boyd" stated in a meeting "that the African American social workers should work in the fields and the Caucasian social workers should work only in the office." (Id. at 5.) Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 28, 2007. (Id. at 6.) On March 18, 2009, plaintiff was informed by the EEOC that defendant demoted Claudia Boyd and transferred Boyd to "a different Department from [plaintiff]." (Id.)

In December of 2008, plaintiff was reassigned despite not being "on the reassignment list" while a "Caucasian social worker" on the reassignment list was not reassigned. (Id.) In October of 2011, a "Caucasian worker" caused plaintiff to cancel a flight after refusing "to proof read [plaintiff's] court reports before they were submitted to court[.]" (Id. at 7.) Thereafter, plaintiff "accidentally received an e-mail" between two other supervisors which alleged that plaintiff "loss (sic) her fucking mind" on the Caucasian employee. (Id.) On December 28, 2012, and January 25, 2013, plaintiff's pay was delayed, while "four Caucasian Social Workers" did not have their pay delayed. (Id.)

Additionally, plaintiff's mother suffers from dementia. (Id. at 5.) On March 1, 2013, the facility that cares for plaintiff's mother notified plaintiff that the "cost was increasing[.]" (Id. at 8.) On March 6, 2013, plaintiff requested "3 month of (FMLA) off from Program Supervisor Stephen Wallach to care for [her] mother[.]" (Id. at 9.) Wallach "stated that Plaintiff needed to get approval from [plaintiff's] mother's physician[.]" (Id.) On March 14, 2013, "a Caucasian Social worker" was given "a caseload reduction because her mother was ill," which was never offered to plaintiff. (Id.)

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

"On March 15, 2013 Plaintiff spoke to [her] mother's physician Janice Rogers and explained to her [plaintiff] needed 3 month (sic) off for (FMLA) to care for [plaintiff's] mother[.]" (Id.) "Ms. Rogers approved [the] leave with the condition . . . . [that] Plaintiff had to look into bringing her [mother] home." (Id.) "On April 8, 2013," plaintiff received a call from Dr. Rogers expressing "surprise [plaintiff's] mother was not home yet." (Id.)

On April 22, 2013, plaintiff was informed that she was being placed on administrative leave after plaintiff's supervisor, Marina Chambers, received "a note from [plaintiff's] mother's physician stating that [plaintiff's] (FMLA) leave was canceled[.]" (Id. at 10.) "On May 7, 2013, Plaintiff had a meeting with Program Manager Stephen Wallach, Supervisor Marina Chamber, [and] . . . union Representative John Bonilla to discuss the allegations of misrepresenting [plaintiff's] (FMLA)." (Id.) At some point in time Wallach also discussed plaintiff's "over usage of data on [plaintiff's] County issue I phone." (Id.) On August 28, 2013, plaintiff "had to pick up the proposed dismissal packet[.]" (Id. at 11.)

On June 16, 2017, defendant filed a motion to dismiss the amended complaint. (ECF No. 21.) On October 31, 2017, the previously assigned magistrate judge issued findings and recommendations, recommending that the motion to dismiss be granted excepts as to the amended complaint's claims of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, as well as a claim for violation of the Fourteenth Amendment. (ECF No. 26.) The assigned District Judge adopted those findings and recommendations in full on January 8, 2018. (ECF No. 36.) Defendant filed an amended answer on February 15, 2018. (ECF No. 38.)

On October 30, 2018, this matter was reassigned from the previously assigned magistrate judge to the undersigned. (ECF No. 51.) Defendant filed the pending motion for summary judgment on January 22, 2019. (ECF No. 65.) Plaintiff filed an opposition on March 15, 2019. (ECF No. 75.) Defendant filed a reply on March 22, 2019. (ECF No. 77.) The undersigned took defendant's motion for summary judgment under submission on March 25, 2019. (ECF No. 78.)
////
////

**STANDARDS**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted). "In short, what is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'" Zetwick v. County of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Reza v. Pearce, 806 F.3d 497, 505 (9th Cir. 2015)).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

////

////

| | |
|---|---|
| 1 | **DEFENDANT'S STATEMENT OF UNDISPUTED FACTS** |

Defendant's statement of undisputed facts—supported by citation to declarations, exhibits, and transcripts from depositions—asserts in relevant part the following. Plaintiff was employed as a social worker for the County of Sacramento from 2005 until her termination in 2013. Plaintiff's mother was diagnosed with dementia and resided in an assisted living facility. A Certification for Family Leave was completed by Dr. Janice Rogers of Kaiser Permanente, to authorize the leave for the stated purpose of allowing plaintiff "to provide supportive care, transportation, and assistance with activities of daily living" for her mother. Plaintiff's mother remained living in a residential care facility during the entire period of plaintiff's FMLA leave which commenced in March of 2013. (Def.'s SUDF (ECF No. 65-1) 1, 3-4, 7.[2])

Several weeks into plaintiff's FMLA leave, on April 8, 2013, plaintiff received a call from Dr. Rogers expressing surprise that plaintiff's mother "was not home yet." In a letter dated April 12, 2013, addressed "to whom it may concern" from Janice G Rogers, M.D., it provides that the certification for healthcare for plaintiff "was based on [plaintiff] providing care, transportation and assistance with daily living to her mother" but that Dr. Rogers "learned that the patient has been in an assisted living facility and not under the care of her daughter; thus the FMLA that was approved for the time period of 03/18/13 - 06/09/13 is being cancelled." (Def.'s. SUDF (ECF No. 65-1) 8-9.)

Plaintiff was advised by letter dated April 22, 2013, that she was placed on paid administrative leave effective immediately "pending investigation of possible improper use of FMLA/CFRA." Plaintiff remained on paid administrative leave from April to October of 2013. On May 7, 2013, plaintiff met with Stephen Wallach, Marina Chambers, and plaintiff's union representative John Bonilla. A memo summary of the May 7, 2013 meeting initialed by plaintiff provides that plaintiff told her mother's physician Dr. Rogers that she was "preparing home for mother" and "getting house fixed. Leaking roof. Asbestos in home." (Def.'s. SUDF (ECF No. 65-1) 10-11, 13-14.)

////

---

[2] Citations here are to defendant's specific numbered undisputed fact asserted.

As a County of Sacramento employee with CPS, plaintiff signed an agreement for the issuance of an iPhone 4s; the agreement provided that "[e]xcessive use . . . for personal call, Internet access or text messaging, may constitute abuse of County resources and result in disciplinary actions." Plaintiff used 9 gigabytes of data between March 22, 2013, and April 21, 2013, on her County issued phone while on leave, for non-County business. A memo requesting discipline was submitted by Supervisor Marina Chambers to Stephen Wallach on June 19, 2013. The stated basis for the request was plaintiff's "dishonesty, fraudulent use of FMLA benefits and for inappropriate and excessive use of her County issued cell phone." (Def.'s. SUDF (ECF No. 65-1) 15, 17-18.)

On August 27, 2013, the CPS Division Manager, Patrick Mangan, issued a Recommendation For Dismissal and forwarded it to the Director of Health and Human Services, Dr. Sherri Z. Heller, for approval. On August 28, 2013, Director Heller issued a Notice of Proposed Disciplinary Action, recommending plaintiff's dismissal based on violation of County rules and regulations and the National Association of Social Workers Code of Ethics. At the end of this Notice of Proposed Disciplinary Action plaintiff was advised that she had "ten (10) calendar days" to respond before a final decision would be made. Plaintiff testified in her deposition that she "didn't respond because [she] didn't know [she] was supposed to and no one told [her] to." (Def.'s SUDF (ECF No. 65-1) 19-20, 22.)

Prior to her termination, plaintiff participated in a Skelly hearing[3] on September 13, 2013, where plaintiff was represented by union representative John Bonilla. The union presented plaintiff's argument that Dr. Rogers did not inform plaintiff of the FMLA cancellation during their phone call. After reviewing plaintiff's argument and evidence, the Skelly hearing officer, relying upon "multiple documented instances of dishonesty," determined that the "evidence submitted [did] not warrant a change in the level of discipline." On October 9, 2013, Stephen Wallach personally served plaintiff with the Order of Disciplinary Action - Dismissal.

---

[3] "A Skelly hearing is a pre-disciplinary, administrative hearing, during which a public employee has an opportunity to present his version of relevant events." Cason v. San Diego Transit Corp., No. 10-CV-0098 IEG (MDD), 2011 WL 1596315, at *2 (S.D. Cal. Apr. 25, 2011).

7

(Def.'s. SUDF (ECF No. 65-1) 34-44.)

**PLAINTIFF'S OPPOSITION**

Local Rule 260(b) requires a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed facts and (2) expressly admit or deny each fact. Under that provision the party opposing summary judgment is also required to cite evidence in support of each denial. Here, plaintiff's opposition has attempted to comply with Local Rule 260(b). (ECF No. 75.) Rather than recreating every disputed fact, the undersigned will discuss plaintiff's relevant denials in analyzing defendant's motion for summary judgment below.

**ANALYSIS**

**I.  Title VII**

"Title VII exists in large part 'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" Clemens v. Centurylink Inc., 874 F.3d 1113, 1115 (9th Cir. 2017) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975)). To this end, "Title VII forbids certain employers from 'discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Campbell v. Hawaii Department of Education, 892 F.3d 1005, 1012 (9th Cir. 2018) (quoting 42 U.S.C. § 2000e-2(a)(1)).

Defendant argues that plaintiff's claim for race-based discrimination in violation of Title VII is unexhausted. (Def.'s MSJ (ECF No. 65-2) at 13.) "In order to bring a Title VII claim in district court, a plaintiff must first exhaust her administrative remedies." Sommatino v. U.S., 255 F.3d 704, 707 (9th Cir. 2001). A plaintiff exhausts their "administrative remedies by filing a charge with the EEOC or an equivalent state agency, like the DFEH, and receiving a right-to-sue letter." Scott v. Gino Morena Enterprises, LLC, 888 F.3d 1101, 1106 (9th Cir. 2018). Here, plaintiff did file a Notice of Charge of Discrimination with the EEOC on November 12, 2013. (Def.'s Ex. K (ECF No. 65-4) at 97-98.)

However, plaintiff's EEOC charge did not even implicate, let alone allege, that the defendant engaged in race-based discrimination. In this regard, under the check-the-box section

of the form for "CIRCUMSTANCES OF ALLEGED DISCRIMINATION" the boxes for "Sex," "Age," and "Disability" based discrimination are checked, while the box for "Race" based discrimination is not checked. (Id. at 97.) Moreover, the charge's factual allegations do not concern racial discrimination.

Instead, the form's factual allegations reflect that plaintiff alleged that supervisor Marina Chamber asked plaintiff "how many years before [plaintiff] retire[d] from Respondent." (Id. at 98.) That plaintiff had been put on "house arrest" pending an investigation into "improper usage of FMLA[.]" (Id.) And concluded with the following paragraph:

> I believe that I have been discriminated against on the basis of my age (fifty five years of age) in violation of the Age Discrimination in Employment Act of 1967, as amended. I also believe that I have been discriminated against in violation of the Americans with Disabilities Act of 1990, as amended. I further believe that I have been discriminated against on the basis of my sex (female/primary care-giver) in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Id.)

Plaintiff does not dispute the failure to exhaust a claim of race-based discrimination. Instead, plaintiff argues that "EEOC/EFH Charge of race Discrimination is not required for exhaustion of administrative remedy when pleading a requirements brought pursuant to the provision of the Civil Right (sic) act of 1866[.]" (Pl.'s Opp.'n (ECF No. 75) at 19.) Plaintiff is mistaken.

The court only has jurisdiction over "charges of discrimination that are like or reasonably related to the allegations made in the EEOC charge, or that fall within the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Deppe v. United Airlines, 217 F.3d 1262, 1267 (9th Cir. 2000) (quotation omitted). "We 'consider [a] plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.'" Freeman v. Oakland Unified School Dist., 291 F.3d 632, 636 (9th Cir. 2002) (quoting B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1100 (9th Cir. 2002)).

////

Here, race-based discrimination was not like or reasonably related to the allegations made in the EEOC charge. Plaintiff, therefore, has failed to exhaust a claim of race-based discrimination. Accordingly, the undersigned recommends that defendant's motion for summary judgment be granted as to this claim. See Chew v. City and County of San Francisco, 714 Fed. Appx. 687, 691 (9th Cir. 2017) ("Because Plaintiff failed adequately to disclose to the EEOC and the DFEH the claims advanced here, he failed to exhaust his administrative remedies. This barred his Title VII and FEHA claims, and warranted summary judgment for Defendants.").

## II. 42 U.S.C. § 1981

42 U.S.C. § 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). In the employment context, 42 U.S.C. §1981 "prohibits [race-based] discrimination in the 'benefits, privileges, terms and conditions' of employment." Surrell v. California Water Service Co., 518 F.3d 1097, 1103 (9th Cir. 2008) (quoting 42 U.S.C. § 1981(b)). Unlike Title VII, there is no exhaustion requirement prior to bringing a § 1981 claim.[4] See Mitchell v. Keith, 752 F.2d 385, 392 (9th Cir. 1985) ("there is no requirement that a plaintiff file a discrimination claim in order to bring suit under § 1981").

"Under this circuit's case law, § 1981 contains a right of action against municipalities." Pittman v. Oregon, Employment Dept., 509 F.3d 1065, 1067 (9th Cir. 2007) (citing Federation of African American Contractors v. City of Oakland, 96 F.3d 1204 (9th Cir. 1996)). But see Buntin v. City of Boston, 857 F.3d 69, 72-73 (1st Cir. 2017) ("Joining the majority of our sister circuits, we hold that § 1981 . . . provides no implied private right of action for damages against state actors"). "[C]laimants suing state actors [under § 1981] must establish that their alleged injury was the result of a 'policy or custom' of that state actor." City of Oakland, 96 F.3d at 1215

---

[4] However, "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." Manatt v. Bank of America, NA, 339 F.3d 792, 797 (9th Cir. 2003).

(quoting Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978)); see also Huddleston v. City & County of San Francisco, Case No. 16-cv-1998 YGR, 2016 WL 4729175, at *5 (N.D. Cal. Sept. 12, 2016) ("a municipality cannot be held liable under Section 1981 unless the alleged constitutional violation was committed pursuant to an official policy, custom, or practice"). "[O]r that the injury was caused or ratified by an individual with 'final policy-making authority.'" Chudacoff v. University Medical Center of Southern Nevada, 649 F.3d 1143, 1151 (9th Cir. 2011) (quoting Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 964 (9th Cir. 2008)). "The action inflicting the injury must flow from an explicitly adopted or a tacitly authorized municipal policy." Schiff v. City and County of San Francisco, 816 F.Supp.2d 798, 810 (N.D. Cal. 2011).

Here, the parties do not dispute that defendant has a "comprehensive formal policy" that prohibits racial discrimination against any applicant or employee. (Pl.'s Opp.'n (ECF No. 75) at 20.) Nor does plaintiff dispute that the supervisor who stated in 2007 that "African American social workers should work in the fields and Caucasian social workers should work in the office" was subject to an investigation and demoted by defendant. (Id. at 21.) Moreover, plaintiff has failed to offer any evidence that plaintiff was subjected to race-based discrimination pursuant to an official policy, custom, or practice, or as a result of an employee acting as a "final policymaker."

As recounted above, plaintiff's amended complaint alleges roughly a half-dozen instances in which "Caucasian" employees were treated better than plaintiff over plaintiff's more than eight years of employment. Likewise, plaintiff's opposition attempts to rely on alleged examples of racial disparity and discrimination engaged in by the defendant against other parties. For example, plaintiff argues that "four black women hired by the County [and] three [were terminated]." (Id. at 12.) That two "Caucasian" coworkers engaged in similar conduct as plaintiff but remained employed. (Id.) And cites to an undated, unsigned, "COUNTY OF SACRAMENTO Formal Grievance Form," apparently completed by a union representative, alleging that "African American and African American Culture workers have been repeatedly passed over for promotions within the department[.]" (Id. at 12, 64.)

11

The Ninth Circuit has "long recognized that a custom or practice can be 'inferred from widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.'" Hunter v. County of Sacramento, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting Nadell v. Las Vegas Metro. Police Dep't, 268 F.3d 924, 929 (9th Cir. 2001)). However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) holding modified by Navarro v. Block, 250 F.3d 729 (9th Cir. 2001)).

Here, plaintiff has failed to provide any evidence of a "widespread practice" or of "repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Plaintiff argues that "Defendant's . . . custom of systemic endemic racial discrimination goes back as far as the case of Anthony v. County of Sacramento, 898 F. Supp. 1435 (1995)[.]" This citation, however, is to an order that merely denied the defendant's motion for summary judgment as to the plaintiff's hostile work environment claim. Id. at 1440. The order did not find that the defendant engaged in wrongful conduct. And the court's docket reflects that the action ended in a jury verdict in favor of the defendant.[5]

In the absence of any evidence that the conduct plaintiff complains of was the result of an official policy, custom, or practice, or the result of an official with policy making authority, the undersigned recommends that defendant's motion for summary judgment be granted as to this claim. See Shahrivar v. City of San Jose, 752 Fed. Appx. 415, 418 (9th Cir. 2018) ("Shahrivar's allegations do not plausibly allege that the City of San Jose maintained a discriminatory policy or custom and his claim against the municipality was properly dismissed."); Brown v. City and

---

[5] The court may take judicial notice of its own files and of documents filed in other courts. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice of documents related to a settlement in another case that bore on whether the plaintiff was still able to assert its claims in the pending case); Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar and related claims); Hott v. City of San Jose, 92 F.Supp.2d 996, 998 (N.D. Cal. 2000) (taking judicial notice of relevant memoranda and orders filed in state court cases).

County of San Francisco Department of Public Health, Case No. 13-cv-4213 JCS, 2014 WL 6482059, at *12 (N.D. Cal. Nov. 18, 2014) ("Defendant is entitled to summary judgment as to Brown's claim under § 1981 because Brown has not identified evidence that any conduct at issue was the result of an official policy."); Lelaind v. City and County of San Francisco, 576 F.Supp.2d 1079, 1089 (N.D. Cal. 2008) ("Plaintiff has not offered any evidence that the challenged acts in this case were performed pursuant to a policy, custom or practice, or that an official with policy-making authority was in any way involved with the challenged acts. The City's motion for summary judgment is GRANTED insofar as the seventh and eighth causes of action allege municipal liability under 42 U.S.C. sections 1981 and 1983."); Harris v. City of Fresno, 625 F.Supp.2d 983, 1012 (E.D. Cal. 2009) ("Plaintiff has failed to create a genuine issue of fact as to whether the alleged racial discrimination/harassment was caused by a policy or custom of the City within the meaning of Monell and its progeny. Summary judgment on Plaintiff's § 1981 claim is GRANTED.").

### III. Fourteenth Amendment Procedural Due Process

Plaintiff's amended complaint asserts, in a vague and conclusory manner, that plaintiff's termination violated plaintiff's right to Due Process under the Fourteenth Amendment. In this regard, the amended complaint alleges that plaintiff received "lack of proper notice[.]" (Am. Compl. (ECF No. 20) at 17.) That at the Skelly hearing plaintiff "did not have an impartial decision maker[.]" (Id.) And that plaintiff "was not given the opportunity to confront and cross-examine witness (sic) or be provided with evidence against [plaintiff]." (Id.)

"The protections of the Due Process Clause apply to government deprivation of those perquisites of government employment in which the employee has a constitutionally protected 'property' interest." Gilbert v. Homar, 520 U.S. 924, 928 (1997). "In California, permanent state employees possess a property interest in their job, guaranteed by statute, with attendant due process rights in their continued employment." Freitag v. Ayers, 468 F.3d 528, 548 (9th Cir. 2006).

> In Skelly v. State Pers. Bd., 15 Cal.3d 194 (Cal. 1975), the Supreme Court of California held that "due process does mandate that the employee be accorded certain procedural rights before" being

> removed. At a minimum, these pre-removal safeguards must include "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline."

Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 968 (9th Cir. 2011).

Here, accepting as true plaintiff's statement of facts, the following is undisputed. Plaintiff was advised by a letter dated April 22, 2013, that plaintiff was thereafter placed on paid administrative leave pending an investigation into possible improper FMLA use. (Pl.'s Opp.'n (ECF No. 75) at 16.) On May 7, 2013, plaintiff met with union representative John Bonilla, plaintiff's supervisor Marina Chambers, and program manager Stephen Wallach. (Id. at 16-17.) On August 28, 2013, Director Heller issued a Notice of Proposed Disciplinary Action recommending plaintiff's dismissal based on a violation of Sacramento County rules and the National Association of Social Workers Code of Ethics, although plaintiff disputes violating those provisions. (Id. at 18.) The Notice provided plaintiff with 10 calendar days to respond. (Id. at 19.)

Prior to being terminated plaintiff participated in a Skelly hearing. (Id. at 22.) Prior to that hearing plaintiff met with union representative John Bonilla and was represented by Bonilla at the hearing. (Id.) At the Skelly hearing, Bonilla presented an argument on plaintiff's behalf. (Id.) While plaintiff asserts that the "Skelly Hearing may have been 20 minutes or less" and that there "was no oral argument heard other than the union representative menacing (sic) my mother," plaintiff does not dispute that there was a hearing, plaintiff was represented, and that plaintiff was afforded an opportunity to be heard. (Id. at 24.)

Moreover, defendant has submitted as an exhibit a copy of the Skelly Hearing Report ("Report"). (Def.'s Ex. A (ECF No. 65-4) at 2.) The report reflects that plaintiff's union representative provided a detailed argument, as well as evidence in support, challenging defendant's charges of wrongdoing. The Skelly hearing officer carefully considered each of those responses in light of the allegations and evidence against plaintiff, before explaining why plaintiff's dismissal should proceed. (Id. at 2-11.)

////

14

Under these circumstances, the undersigned finds that defendant's motion for summary judgment should be granted as to this claim. See Novoa v. City and County of San Francisco, Case No. 14-cv-3617 JST, 2015 WL 5169123, at *7 (N.D. Cal. Sept. 3, 2015) (granting defendants summary judgment where "evidence demonstrates that Defendants provided, and Plaintiff fully utilized, procedures ensuring pre-deprivation due process"); Robinson v. City & County of San Francisco, Case No. 13-cv-5823 JSC, 2015 WL 4881158, at *5 (N.D. Cal. Aug. 14, 2015) ("This process provided a more than adequate opportunity for him to be meaningfully heard prior to termination."); Lopez v. City and County of San Francisco, Case No. 12-cv-6523 MEJ, 2014 WL 2943417, at *9 (N.D. Cal. June 30, 2014) ("The Court finds this process as a whole provided Lopez with more than an adequate opportunity to be heard at a meaningful time and in a meaningful manner.").

**CONCLUSION**

In the absence of any evidence of a disputed issue of material fact regarding the claims analyzed above, the undersigned finds that defendant is entitled to summary judgment in its favor on the complaint's claims of race-based discrimination in violation of Title VII and 42 U.S.C. § 1981, as well as the claim for violation of the Fourteenth Amendment. After adequate time for discovery, plaintiff has failed to make a showing sufficient to establish the existence of any disputed issue of fact regarding elements essential to plaintiff's claims and on which plaintiff would bear the burden of proof at trial.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's January 22, 2019 motion for summary judgment (ECF No. 65) be granted;

2. Judgement be entered for defendant; and

3. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 28, 2019

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.pro se\jackson0920.msj.f&rs